UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SHEILA FERNANDEZ SANTIAGO<br><br>Plaintiff(s)<br><br>v.<br><br>KING UNIFORMS & INDUSTRIAL LAUNDRY, INC.<br><br>Defendant(s) | CIVIL ACTION: |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**COMES NOW** Plaintiff Sheila Fernandez Santiago, through counsel, and hereby complaints as follows:

**NATURE OF ACTION AND BASIS FOR JURISDICTION**

1. This is a civil rights action by plaintiff Sheila Fernandez Santiago ("Plaintiff") for unlawful job discrimination at a public accommodation known as King Uniforms & Industrial Laundry, Inc. ("King") brought pursuant to the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. Federal question subject matter jurisdiction is proper under 28 U.S.C. § 1331 for this action seeking compensatory.

2. Plaintiffs additionally summon this Honorable Court's pendent/supplemental jurisdiction under 28 U.S.C. § 1367 seeking redress for violations of various Commonwealth of Puerto Rico laws, including but not limited to, Act No. 100 of June 30, 1959, 29 L.P.R.A. §146 et seq.; Act No. 44 of July 2, 1985, 1 L.P.R.A. §501 et seq.; Puerto Rico's Constitution,

      Article II, Sections 1, 8, 16, 20; and Act No. 115 of December 20, 1991, 29 L.P.R.A. §194 et seq.

3. On or about July 12, 2020, Plaintiff timely filed with the Equal Employment Opportunity Commission's ("EEOC") office in San Juan, Puerto Rico, an administrative charge claiming, among other things that he was unlawfully discriminated due to her disabilities during her employment with King.

4. The previously stated administrative employment discrimination charge was assigned number 16H-2020-00198.

5. On April 28, 2021, the EEOC issued a Right-To-Sue Notice in the above referenced EEOC Charge. The stated Right-To-Sue Notice was placed in the U.S. Mail on April 28, 2021. On or about April 30, 2020, Plaintiff received the before stated Right-To-Sue Notice issued by the EEOC.

6. Plaintiff seeks redress for the damages suffered and those damages she continues to suffer as a result of King's continuous unlawful employment discrimination on the basis of Plaintiff's disability, violation of her constitutional rights, and for retaliation because Plaintiff engaged in various statutorily protected activities, including but not limited to, opposing the before mentioned unlawful employment practices, and requesting reasonable accommodations for her disabilities. Plaintiffs further seek redress for the damages she suffered because of King's failure to provide reasonable accommodation for her disability and discrimination against her.

**PARTIES**

7. Plaintiff Sheila Fernandez Santiago is a citizen of the United States of America and is a resident of Hatillo, Puerto Rico.

8. At all times relevant hereto, Plaintiff was a "qualified individual with a disability" within the meaning of such term as provided by the ADA and Commonwealth of Puerto Rico laws. Plaintiff could perform her essential job functions with King with a reasonable accommodation.

9. Defendant King is a corporation organized under the laws of the Commonwealth of Puerto Rico and has its principal place of business at Road # 2 Km. 69.9 Santana Ward, Arecibo, Puerto Rico, 00612. Defendant King is a duly authorized corporation that conducts business within the Commonwealth of Puerto Rico. At all relevant times to this Complaint, named party Defendant King is a corporation with the legal capacity to sue and be sued.

10. At all times relevant hereto, Defendants were Plaintiff "employer" of under the definition of such term as provided by the ADA and the other Commonwealth of Puerto Rico laws that have been invoked herein.

11. At all relevant times hereto, King controlled Plaintiff's terms and conditions of employment, determined her working conditions, job responsibilities, work assignments and supervised her work.

12. At all times relevant herein, King was well aware of Plaintiff's disabilities and health conditions as Plaintiff personally informed her immediate supervisors and to the highest levels of the company, including Mr. Renaldo Pérez (President) and his son, a manager. The State Insurance Fund Corporation, *Fondo del Seguro del Estado*, also informed King of Plaintiff's disabilities and health conditions and recommended reasonable accommodations for Plaintiff's disabilities.

13. King and its agents have received actual knowledge of Plaintiff's administrative charge filed before the EEOC.

**FACTUAL BACKGROUND**

14. On December 12, 2017 Sheila Fernandez Santiago (hereinafter, Sheila) sent her Curriculum Vitae and employment history to King's email: admi@kinguniforms.net, to apply for a job vacancy available at King Uniforms, Inc. On the same day, Sheila was called to schedule a job interview for the next day, December 13, 2017.

15. Sheila attended the job interview. The person who interviewed her was Mr. Erick Pérez. Mr. Erick Pérez is the nephew of Mr. Reynaldo Pérez, President.

16. Sheila was offered employment and started working for King Uniforms, Inc. on December 14, 2017. She started working in the dry-cleaning area. She was in this area until the end of January 2018. Her immediate supervisor was Mrs. María.

17. After working on the dry-cleaning area, Sheila was referred to the uniforms section, where she worked for a couple of weeks. Subsequently, she is transferred to the industrial laundry area, where she performed the following functions: feeding the machines, folding and packing. Her immediate supervisors at the time was Mr. Carlos Hernández and Mr. Erick Cintrón.

18. In 2018, Sheila presented an incident with supervisor Erick Cintrón. This person disrespected her and told her a series of profanities. Because of this incident, Sheila had a nervous breakdown, due to the need to go and enter the

emergency room, and she sought psychological treatment. Her supervisor, Carlos Hernández, disagreed with Sheila being absent from her work due to this treatment.

19. Constantly and on a recurring basis, Sheila filed complaints. These complaints were both verbally and in writing for the manner of the treatment that she claimed was not correct by supervisor Erick Cintrón.  At the time, she always worked standing up, often without lunch break and without leaving time.

20. On November 06, 2019 at about 1:15 PM Sheila felt immense pain in her right leg, when she went to the bathroom, she verified that she had a bruise; then she returned to the work area, but she started to limp and in the area where she had the pain she began to see a form a lump.

21. Sheila reported to the supervisor on duty, Mrs. Lee Rodriguez that she wanted to go to the hospital, but her supervisor told her that she could go to the hospital once the workday is over. After her shift, Sheila went straight to the hospital. The Metropolitan Hospital sent her by ambulance to Centro Médico hospital, because the symptoms and bruises of the worker looked like a clot.

22. On November 08, 2019, Sheila went to the State Insurance Fund Corporation. Then, she reported that her injuries were produced while she was performing the duties of her work. Sheila requested her employer to complete the report for a work accident related to her left leg of the event that occurred in May.

23. On March 05, 2020, Sheila was diagnosed by the State Insurance Fund Corporation, Arecibo regional office, for the following medical conditions: Phlebitis, Thrombophlebitis, venous insufficiency of right leg.

24. Phlebitis is an inflammation of a vein. Phlebitis can be superficial, in the skin, or deep in the tissues under the skin. Superficial phlebitis is phlebitis that is in a superficial vein of the skin.

25. Thrombophlebitis is when a blood clot appears that causes inflammation.

26. Tromboflebite is an inflammatory process that causes blood clots to form that produce obstructions in one or more veins, generally in the legs. The affected vein may be near the surface of the skin (superficial thrombophlebitis) or deep within a muscle (deep vein thrombosis).

27. The State Insurance Fund Corporation sent a letter both to to Sheila and her employer.

28. The State Insurance Fund Corporation informed Sheila and King that Sheila's conditions cause a decrease in physical capacity and tolerance. Dr. E. Camilo Torres, Occupational Physician in charge of the case, referred the matter to the Rehabilitation office, with Dr. Mayra Berrios Pérez, rehabilitation specialist, license # 00672.

29. The State Insurance Fund Corporation informed that Sheila's treatment consists of wearing anti-embolic stockings (compression stockings) 24 hours

a day, 7 days a week, except for sleeping and bathing; and that Sheila was receiving medical treatment from November 08, 2019 to March 2020.

30. During one of the ambulance visits to the emergency room, Sheila was informed by the doctors of the need for reasonable accommodation at her workplace.

31. Sheila continued working and giving the best of herself within what was humanly possible despite the ailments; but when she worked, the pain in the right part of her leg increased.

32. On March 13, 2020, the State Insurance Fund, vía postal mail, sent a letter to the Sheila and her employer, detailing the reasonable accommodations required by Ms. Sheila.

33. The next day (March 14, 2020) Sheila also showed the letter to the supervisor Mr. Carlos Hernández, who advised her to not to show it, because *he* could put Sheila out of work.

34. Sheila pondered those words for about a week, then she proceeded to the office to report, but as it was at the beginning of the pandemic, the office staff was not working in person, so the secretary Ms. Maritza Hernández was not present at that time.  However in the place Mr. Alexander Reveron was present, he is accountant of the company King Uniforms, who received the

letter with all the details concerning her request for a reasonable accommodations.

35. Sheila waited for a reasonable time for the company to give her a response to the letter, or to observe any significant change in her work schedule regarding the reasonable accommodations she needed. However, she never received response from King or its agents.

36. Sheila noted that in the course of time following the delivery of the letter, her workday increased from 30 hours per week to 36 hours per week, and increased from 18 hours to 24 hours per day.

37. In May, Sheila reported to her supervisors that she was unable stand during the totality of her shift because the pain was increasing and that she needed a reasonable accommodation: alternating a standing and a seated position using a stool.

38. In response, King argued that the requested accommodation was not possible because the job required workers to stand at all times. King argued that there was no mean of implementing a reasonable accommodation in the case of Sheila.

39. On May 16, 2020, Sheila was treated in the emergency room of Pavia Arecibo Hospital, because she had a burst vein, but in this case in her left leg.

40. Sheila communicated with the supervisor Carlos Hernández and the son of the owner of the company King Uniforms, Mr. Rey Manuel Pérez in order to have an interactive dialogue. As a result of that meeting, the agreement reached was that Sheila would work only the area with air conditioning and she could alternate her position even if she was sitting on the floor, because she was not allowed to sit on the chairs (the company did not provide chairs for the staff to sit; all the work was done standing). However, Sheila was monitored on camera and supervisors required her to stand.

41. Despite this, supervisor Lee Hernandez, seeing the situation, decided to give her a pillow so that Sheila could sit on the floor and have "some" comfort. Supervisor Hernandez was fired by the company.

42. After that, Sheila continued her attempts to come to an agreement, to have an interactive dialogue with her employer, including conversations with the President of the company, who informed her: (i) that King cannot provide a chair for the area where Sheila worked, because all the employees would ask for a chair for themselves; (ii) that if she wanted to work "seated" she could work in a position where people "work seated" as is the case of "secretary" or "driver" but the secretarial position was already occupied by the staff, and with respect to the "driver" position she does not have a driver's license, therefore Sheila had not options to be transferred to another work area; (iii)

that she could continue to work, but if she left her job, she would be fired for abandonment; (iv) *part* of this statement was recorded in the meeting held on June 11, 2020, signed by Ms. Sheila Fernández Santiago, as the employee, and Mr. Reinaldo Perez Arnau, as the Employer.

43. By text messages, Sheila communicated with her supervisor Carlos Hernández, who informed her that: (i) "he always tries not to leave anyone without work ... but that the rule of three (3) absences, with or without excuses, would result in termination of the contract; (ii) and clarifies that he knows that Sheila is sick but "absences are absences with or without certificate".

44. On July 11, 2020 Sheila is relocated by orders of the supervisor Carlos Hernández to the **hottest** area between two steam machines (these are used for bending sheets). Sheila questions her supervisor about the decision, particularly because the medical recommendation and requested accommodation was quite the opposite (minimization of exposures to hot areas). Hernandez informs her of the agreement reached with her employer, Mr. Reinaldo Pérez Arnau. For his part, the supervisor, Mr. Hernández, told her: (i) that this is the way it is, and that Sheila had to work where she was needed; (ii) grotesquely he told her that she could not work in the air

conditioning area, because she was needed in the hot area.  Due to the heat, it began to cause her discomfort, requiring Sheila to leave her shift.

45. On July 20, 2020, she personally presented a letter to King Uniforms, Inc., where she was reiterating the need to implement reasonable accommodations for the worker, Sheila, including: alternating between standing and sitting during the workday and implementing a chair at her workplace.  That day, Sheila was summoned to a meeting, in which were present:

    a. Reinaldo Pérez, Rey Manuel Pérez, Carlos Hernández and Maritza Hernández (secretary).

    b. They questioned her about the reason for the letter and what her intention was.

    c. They suggested that she should look for another job and stated that her intentions were to somehow profit by getting money, and warned her that she would not return to work at King Uniforms and that they would do an investigation with OSHA and the State Insurance Fund.

    d. This situation made Sheila nervous and worried.

46. On July 28, 2020, Ms. Sheila was summoned because of an on-site investigation by the State Insurance Fund, but ultimately Sheila was not allowed into the meeting.

47. In August, King contacted Sheila by phone, and informed her that thay would try to "help" her. This purported help was that Sheila would be able to choose the hours of work she would be willing to do, <u>standing</u>. King emphasized that the business hours of the company were from 7:30 a.m. until 5:00 p.m. or more, depending on the day. King also offered Sheila the option to choose the days she was willing to work, <u>standing</u>. King characterized its offers using the words "Flex Time". When Sheila asked about the possibility of making reasonable accommodations by allowing her to work standing part of the time and part of the time seating, her request was denied. King claimed that they were unable to offer that accommodation, because the job function was necessarily standing, not seating, because Sheila could "hit herself" and cause an accident and that Sheila needed to work the totality of her shift standing without any excuses.

48. The next day, Sheila contacted King through the secretary Mrs. Maritza Hernández, who transferred the call to the President of the company, Mr. Reinaldo Pérez Arnau. Sheila immediately told him that she appreciates the offer of flexible time, but informed him that she had a right to a reasonable accommodation, and that alternation between sitting/standing position in her work area was feasible and reasonable. She also highlighted that her performance was well above average, and informed that her productivity

would not be affected. Sheila also highlighted that she was well aware and mastered the job at all areas of the company, meaning that she could be relocated to any other area where she would be able to alternate between a siting and standing position during her shift. To illustrate how an accommodation was feasible, Sheila informed that and area known among the employees as the "studio" would be appropriate for her, as she could put a her chair under the table, where she was not going to be a burden for others. Mr. Pérez insisted that her level of production would be lower, but when Sheila invited Mr. Pérez to allow her chair and reevaluate the results in a few days, Mr. Pérez once again insisted that it was going to be a hazard and that other were going to request chairs, causing more hazard. Sheila reiterated that she is willing to work, and that she was a high performance employee, but she needed to work with the accommodation.

49. King assumed the position is that they were not going to give her the reasonable accommodation. From the company's perspective, *any* alternation between a sitting and standing position, *to any degree or extent*, was not reasonable. According to the company, the workers were required work standing 100% of the time and that any chair was a hazard.

50. On August 03, 2020 she sent a second letter to the employer, Mr. Reynaldo Pérez, reiterating what was stated on March 05, 2020, where he was informed

of the medical recommendations, in accordance with the medical diagnosis and it was recommended to alternate postures from sitting to standing and to avoid being exposed to high temperatures by Mrs. Sheila. Letter signed by Lic. Mayra Berrios Pérez, specialist in Rehabilitation.

51. At the time of her last day of work, when she was asked to leave because of the pending investigation the the State Insurance Fund, Sheila worked in the company in the dry-cleaning area and folding area. Sheila worked with a variety of items, such as curtains, carpets, tablecloths, towels, scrubs, fitted; the folding, for example, can be done from a seated position. In addition, in the area where the air conditioning is located, a stool can be placed under the table. Yet, King always denied Sheila a reasonable accommodation.

52. Sheila was never called to work again. King misrepresented to Commonwealth agencies that Sheila voluntarily abandoned her work, causing her additional problems to secure unemployment benefits during the COVID-19 pandemic. In truth and in fact, Sheila was willing to work at all times, but Sheila was unable to return to work because King denied her a reasonable accommodation.

53. The ADA's regulations state that: "[t]o determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of accommodation. This process should identify the precise limitations resulting from the disability and the potential reasonable

accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). Similarly, the EEOC's interpretive guidelines provide that: "[o]nce a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." 29 C.F.R. Pt. 1630, App. § 1630.9 at 359.

54. Sheila's initial request back in March 2020 for a reasonable accommodation for a chair suited for her disability, triggered King's obligation to participate in the interactive process with Sheila to determine the appropriate accommodation. However, as described above, King unnecessarily delayed this process, took adverse employment actions against Sheila and ultimately denied her a reasonable accommodation. As part and parcel of King's unlawful employment practices towards Sheila, by reporting to the Puerto Rico Deparment of Labor that Sheila was unwilling to work, King intentionally misrepresented the agency requests for documentation (such as employment verification) that was required by Puerto Rico Department of Labor and for other matters, thereby causing emotional and economical damages to her during the pandemic.

55. King has willfully violated ADA's provisions by engaging in discriminatory employment practices against Sheila on account of her disabilities by failing to reasonably accommodate her disabilities by failing to provide a chair and by failing to assign him to other work posts that were available to minimize exposure to heat on account of said disabilities, and in retaliation for having engaged in statutorily protected conduct of requesting reasonable accommodations.

56. King further failed to engage in reasonable accommodation dialogue with Sheila despite having knowledge of her disabilities and despite his requests for reasonable accommodation due to her physical disabilities. As such, Defendant King is liable in compensatory damages against Sheila for its unlawful conduct.

## SECOND CAUSE OF ACTION: PUERTO RICO CONSTITUTION

57. King violated Sheila's rights secured under Article II, Sections 1, 8, 16 of Puerto Rico's Constitution by violating his dignity, privacy, health at the work place and discriminating against her on the basis of his disability and social conditions.

## THIRD CAUSE OF ACTION: ACT 115 AND 100

58. King has violated Sheila's rights secured under Puerto Rico Acts Nos. 115 and 100. Defendant King has discriminated against Plaintiff Sheila on account of her disabilities, after requesting reasonable accommodations from her employer and otherwise grieving to her employer about her working conditions. Sheila was also subject to retaliation after engaging in statutorily protected activity.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A. A declaratory judgment that Defendant is in violation of the specific requirements of Title I of the ADA, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who with limited mobility;

B. A permanent injunction which directs Defendants to take all steps necessary to stop its discriminatory practices and to comply with the requirements set forth in the ADA, and its implementing regulations, and which further directs that the Court shall retain jurisdiction

for a period to be determined after Defendant's facilities come into compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; or by closing the public accommodation until it becomes compliant with all applicable regulatory requirements.

C. An award of compensatory damages and reinstatement of employment, including but not limited to back pay or lost wages and prejudgment interests, of not less than ONE MILLION DOLLARS ($1,000,000.00);

D. An award of double compensatory damages under Puerto Rico Acts Nos.115 and 100;

E.  award of costs and reasonable attorney's fees;

F. award of punitive damages under the applicable federal statutes invoked herein;

G. Any other and further relief, which this Honorable Court may deem just, and proper; and

H. A trial by jury.

**DATED**:  JULY 28, 2021.

**VELEZ LAW GROUP LLC**

s/JOSE CARLOS VELEZ-COLÓN
USDC-PR NO.: 231014
JVELEZ@VELEZLAWGROUP.COM

421 AVE MUÑOZ RIVERA
TENTH FLOOR #1009
SAN JUAN PR 00918

1969 S. ALAFAYA TRAIL #379
ORLANDO, FL 32828-8732

TEL: (787) 599-9003

*Attorney for Plaintiff*